**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
JOAQUIN TERRERO,

                            *Plaintiff,*

            - against -

ABIGAIL KIRSCH PIER SIXTY, LLC, *a/k/a* AK PIER
SIXTY, LLC, PIER SIXTY, LLC., CHELSEA PIERS, L.P.,
PATRICK O'KEEFE, *In His Individual and Official
Capacities,* JENNIFER TORMEY*, In Her Individual and
Official Capacities and* NELSON DOMINGUEZ*, in His
Individual and Official Capacities.*

                            *Defendants.*
------------------------------------------------------------------X

**Docket No.:**

**COMPLAINT**

***PLAINTIFF DEMANDS
A TRIAL BY JURY***

PLAINTIFF, JOAQUIN TERRERO, by his attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.    PLAINTIFF complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA"); The Family Medical leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; The New York State Executive Law / New York State Human Rights Law § 296 and the New York City Human Rights Law / New York City Administrative Code § 8-107(1), *et seq*. ("NYCHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated, retaliated against and wrongfully terminated** by Defendants solely due to his **Disability (Sickle Cell Anemia); Perceived Disability** and/or his hospitalizations related thereto.

2.    PLAINTIFF suffers from a disability - Sickle Cell Anemia.

3.      PLAINTIFF JOAQUIN TERRERO was employed as a Houseman at DEFENDANTS ABIGAIL KIRSCH, LLC, PIER SIXTY and/or CHELSEA PIERS for a year and a month. DEFENDANTS began to assign PLAINTIFF to tasks that involved heavy lifting and other strenuous physical activities.

4.      As a result of PLAINTIFF'S disability, PLAINTIFF began to experience "Sickle Cell Crises" wherein his body began to experience pain, loss of blood (requiring transfusions), weakness and other adverse health effects. On multiple occasions, PLAINTIFF was caused to be hospitalized for days and sometimes weeks due to these Sickle Cell Crises.

5.      PLAINTIFF provided DEFENDANTS with notice and medical documentation concerning his disability and need for reasonable accommodations and made several requests to DEFENDANTS for reasonable accommodations. The accommodations requested by PLAINTIFF and his doctors would not have caused any inconvenience or undue hardship on DEFENDANTS.

6.      However, DEFENDANTS did not engage in any interactive process with PLAINTIFF, did not advise PLAINTIFF of his rights under the Family Medical Leave Act, nor did DEFENDANTS attempt to accommodate PLAINTIFF due to his disabilities. Instead, DEFENDANTS, collectively and individually, began to threaten PLAINTIFF'S employment on each occasion that he experienced Sickle Cell related illnesses and Crises.

7.      After a year of employment, when PLAINTIFF was eligible for FMLA leave, DEFENDANTS retaliated against PLAINTIFF due to his disabilities and engagement in protected activity by summarily terminating his employment.

8.      To make matters worse, DEFENDANTS callously terminated PLAINTIFF'S employment knowing that PLAINTIFF had a serious illness and required his income and health benefits in order to care for himself - in violation of PLAINTIFF'S rights as outlined below.

## JURISDICTION AND VENUE

9.      Jurisdiction of this Court is proper under 42 U.S.C. §12101 *et seq*., and 28 U.S.C. §§ 1331 and 1343.

10.     The Court has supplemental jurisdiction over the claims Plaintiff brings under state and city laws pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5.      Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6.      Plaintiff received a Notice of Right to Sue from the EEOC, dated July 11, 2019, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7.      This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8.      Plaintiff **JOAQUIN TERRERO** (**hereinafter, "TERRERO" or PLAINTIFF**) is and African American male, who is a resident of the State of New York and County of New York. PLAINTIFF TERRERO suffers from a disability known as Sickle Cell Disease and/or Sickle Cell Anemia.

9.      **ABIGAIL KIRSCH PIER SIXTY** (a/k/a AK PIER SIXTY, L.L.C.,) (**hereinafter**

**"AKPS"**) is a domestic limited liability company formed under the laws of the State of New York. Upon information and belief, DEFENDANT AKPS exclusively operates, manages, supervises and controls the PIER SIXTY facility at CHELSEA PIERS - including but not limited to controlling the hiring and employments of the employees at PIER SIXTY such as PLAINTIFF herein.

10.    Defendant **PIER SIXTY, LLC** (**hereinafter, "PIER SIXTY"**) was and is a limited liability company, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at Pier Sixty at Pier 60, Chelsea Piers, 23rd Street, New York, NY 10011. At all times relevant hereto, Defendant PIER SIXTY employed more than fifty (50) employees.

11.    Defendant **CHELSEA PIERS, L.P** (**hereinafter, "CHELSEA PIERS"**) was and is a limited liability company, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at Pier Sixty at Pier 60, Chelsea Piers, 23rd Street, New York, NY 10011. Upon information and belief, DEFENDANT CHELSEA PIERS owns, operates, controls and/or manages DEFENDANT PIER SIXTY, which is located on its premises. Defendant CHELSEA PIERS employs more than fifty (50) employees.

12.    At all times relevant, **DEFENDANT PATRICK O'KEEFE (hereinafter "O'KEEFE")**, was/is the Director of Catering Services at DEFENDANTS PIER SIXTY and/or CHELSEA PIERS. At all times, DEFENDANT O'KEEFE had the ability to affect the terms and conditions of PLAINTIFF'S employment. DEFENDANT O'KEEFE is being sued herein in his individual and official capacities.

13.  At all times relevant, **DEFENDANT JENNIFER TORMEY (hereinafter "TORMEY")**, was/is that Director of Human Resources at DEFENDANTS PIER SIXTY and/or CHELSEA PIERS. At all times, DEFENDANT TORMEY had the ability to affect the terms and conditions of PLAINTIFF'S employment. DEFENDANT TORMEY is being sued herein in her individual and official capacities.

14.  At all times, **DEFENDANT NELSON DOMINGUEZ (hereinafter "DOMINGUEZ")** was/is the Catering Services Manager at DEFENDANTS PIER SIXTY and/or CHELSEA PIERS. At all times, DEFENDANT DOMINGUEZ had the ability to affect the terms and conditions of PLAINTIFF'S employment. DEFENDANT DOMINGUEZ is being sued herein in his individual and official capacities.

15.  **For purposes of this Complaint, ABIGAIL KIRSCH, LLC, AK PIER SIXTY, LLC, PIER SIXTY, LLC and CHELSEA PIERS, will be collectively referred to as "PIER SIXTY DEFENDANTS."**

## MATERIAL FACTS

16.  PLAINTIFF began his employment with DEFENDANT AK PIER SIXTY, LLC at PIER SIXTY and/or CHELSEA PIERS, as a "Houseman," on or about September 4, 2017. PLAINTIFF worked a full-time weekly schedule and made $13.34 per hour.

17.  At all times, PLAINTIFF performed the functions of his employment in an above-satisfactory manner and (other than the situations discussed below) was never written-up or disciplined as a result of his job performance. PLAINTIFF was otherwise qualified to perform the duties of his employment.

18.  PLAINTIFF suffers from Sickle Cell Anemia, a form of anemia in which red blood cells are misshapen and/or shaped in the form of a "U", which causes slow or decreased blood

flow if the blood cells become stuck in blood vessels. These accumulations of misshapen red blood cells can slow or block blood flow and oxygen to parts of the body. Such instances can cause extreme pain, as well as a host of other physical complications if not treated. Persons suffering from Sickle Cell Anemia experience an occasional painful "crisis" and/or "crises," which are health complications caused by Sickle Cell Anemia.

19.    PLAINTIFF experiences sickle cell related crises periodically and has no control over same with regard to when, where or how a crisis will occur.

20.    Sickle Cell Anemia is a recognized disability under the statutes herein as it substantially limits one or more of PLAINTIFF'S major life activities and PLAINTIFF has a history or record of Sickle Cell Anemia.

21.    PLAINTIFF sometimes experiences a crisis whenever PLAINTIFF endures a physically and/or emotionally stressful event.

22.    During PLAINTIFF'S first week of employment at DEFENDANT PIER SIXTY in September 2017, PLAINTIFF told his direct manager/supervisor DEFENDANT DOMINGUEZ that PLAINTIFF suffered from sickle cell anemia.

23.    At this time, PLAINTIFF asked DEFENDANT DOMINGUEZ for a reasonable accommodation - which was to be given assistance with physically strenuous tasks and/or to not be asked to lift heavy items by himself.

24.    The reason that PLAINTIFF disclosed his disability to DEFENDANT DOMINGUEZ was because DOMINGUEZ ordered PLAINTIFF to perform tasks normally assigned to two or more people.

25.    Specifically, during this first week, PLAINTIFF was instructed to remove a dance floor and to move/push over 300 chairs by himself.

26.    PLAINTIFF performed the task as ordered without protest.

27.    However, when PLAINTIFF went home from work following this physically demanding assignment, PLAINTIFF experienced severe pain due to his disability, which was caused by the strenuous work he was assigned.

28.    Though PLAINTIFF disclosed his disability to DEFENDANT DOMINGUEZ and the fact that DEFENDANT DOMINGUEZ'S assignment had adverse physical consequences for PLAINTIFF, DEFENDANT DOMINGUEZ ignored PLAINTIFF'S stated concerns and disclosures.

29.    DEFENDANT DOMINGUEZ did not inquire further about PLAINTIFF'S disability or his limitations to see if he could accommodate PLAINTIFF or to see if any accommodation could be offered to PLAINTIFF.

30.    DEFENDANT DOMINGUEZ did not send PLAINTIFF to Human Resources to seek a reasonable accommodation.

31.    DEFENDANT DOMINGUEZ did not advise PLAINTIFF of any accommodation that could be made for PLAINTIFF nor did he engage in any interactive process with/for PLAINTIFF following PLAINTIFF'S disclosure of his disability.

32.    Indeed, DEFENDANT DOMINGUEZ continued to assign PLAINTIFF physically demanding tasks and assignments to complete on his own without assistance.

33.    DEFENDANT DOMINGUEZ did not care about PLAINTIFF'S disability because DOMINGUEZ sought no help for PLAINTIFF and continued to subject PLAINTIFF to physically demanding assignments without assistance after PLAINTIFF disclosed his disability.

34.    Other similarly-situated employees were given assistance and/or partners to help them with

strenuous activities, unlike PLAINTIFF.

35.    Giving PLAINTIFF assistance would not have created any hardship on DEFENDANTS, nor would it have caused DEFENDANTS any inconvenience and/or the need to alter the work environment.

36.    PLAINTIFF did not protest and continued to perform the assignments in which he was delegated by DEFENDANT DOMINGUEZ because PLAINTIFF did not want to lose his new employment at DEFENDANT PIER SIXTY.

37.    However, PLAINTIFF'S body and/or his disability, began to give PLAINTIFF problems and issues due to the overly-strenuous assignments being given to PLAINTIFF.

38.    Due to the continued physically strenuous assignments given to PLAINTIFF on a daily basis, PLAINTIFF began to fall-ill and/or suffer from sickle cell crises more frequently.

39.    As a result, on occasion, PLAINTIFF was caused to be hospitalized after his work day and PLAINTIFF was forced to call-out from work as a result.

40.    PLAINTIFF continued to advise COLLECTIVE DEFENDANTS about his disability and continued to ask for reasonable accommodations so that he would not suffer from another Sickle Cell crisis.

41.    PLAINTIFF also continued to provide DEFENDANTS with his doctor's notes and medical documentation concerning his hospitalizations and other medical information to keep them informed about his condition.

42.    On or about December 29, 2017, following an incident wherein PLAINTIFF was hospitalized due to a Sickle Cell crisis, PLAINTIFF showed DEFENDANT DOMINGUEZ proof of his hospitalization and showed DEFENDANT DOMINGUEZ a doctor's note.

43.   Upon information and belief, DEFENDANT DOMINGUEZ, once again, ignored PLAINTIFF'S medical information.

44.   PLAINTIFF then visited PIER SIXTY'S Human Resources Department and discussed his disability with the Director of Human Resources, DEFENDANT JENNIFER TORMEY.

45.   Among other things, PLAINTIFF advised DEFENDANT TORMEY that he could not perform excessive heavy lifting because of his disability.

46.   In response, DEFENDANT TORMEY told PLAINTIFF that she would "*see what we can do*."

47.   For a short period of time after this initial discussion with DEFENDANT TORMEY, PLAINTIFF was not required to perform heavy lifting. However, that time was short-lived as PLAINTIFF would soon after be required to begin heavy lifting once more.

48.   At all times, COLLECTIVE DEFENDANTS were aware of PLAINTIFF'S disability and his need and request for reasonable accommodations.

49.   Without considering the interactive process, Plaintiff's rights under the FMLA and/or PLAINTIFF'S apparent and obvious deteriorating medical condition, DEFENDANTS, collectively and individually, ignored PLAINTIFF'S disabilities, needs, rights and requests for accommodations.

50.   PLAINTIFF could have adequately performed the functions of his employment with a reasonable accommodation.

51.   However, DEFENDANTS began to writeup, discipline and subject PLAINTIFF to other adverse employment actions in retaliation for PLAINTIFF'S disability and/or request(s) for reasonable accommodations.

52.   PLAINTIFF also began to hear rumors from his coworkers about being terminated due to

his absences.

53.     As a result, PLAINTIFF continued to work and even came to work while ill and/or experiencing minor Sickle Cell Crises because he was afraid to lose his employment and/or to receive any further disciplinary action(s).

54.     Specifically, due to his disability, PLAINTIFF would often go to work tired, exhausted, with leg and back pain and other conditions whenever he was asked to perform heavy lifting the day before.

55.     On multiple occasions, PLAINTIFF was in too much pain to get up and/or out of bed due to his disabilities.

56.     Between the years 2017 - 2018, PLAINTIFF suffered from no less than four (4) serious crises, which caused PLAINTIFF to become hospitalized as a result of DEFENDANTS' refusal to accommodate PLAINTIFF.

57.     PLAINTIFF also suffered from multiple minor crises, which did not require hospitalization, but caused PLAINTIFF to be bedridden, as a result of DEFENDANTS' refusal to accommodate PLAINTIFF.

58.     DEFENDANT DOMINGUEZ gave PLAINTIFF another writeup and callously told PLAINTIFF that PLAINTIFF had "*one foot out the door & if [he] continues to miss days of work [he] was going to be terminated.*"

59.     PLAINTIFF began to feel discouraged and in constant fear for his employment because PLAINTIFF did not understand how, despite PLAINTIFF disclosure of his disabilities, DEFENDANT DOMINGUEZ still angrily threatened his job.

60.     PLAINTIFF explained that he was always ready, willing and able to work, wanted to work and needed his job, but was being forced to take days off due to his disability and the crises

caused by DEFENDANTS' failure/refusal to accommodate PLAINTIFF.

61.    In January 2018, PLAINTIFF had a sickle cell crisis, which caused PLAINTIFF to become incapacitated for a week and a half.

62.    Again, in February 2018, PLAINTIFF was back in the hospital due to a sickle cell crisis, which caused PLAINTIFF to undergo a blood transfusion, among other things.

63.    While PLAINTIFF was in the hospital, PLAINTIFF learned from a coworker that the Director of PIER SIXTY, DEFENDANT PATRICK O'KEEFE, was going around the workplace and telling employees that he was tired of PLAINTIFF calling out sick.

64.    Upon information and belief, DEFENDANT O'KEEFE knew that PLAINTIFF was suffering with a disability and that PLAINTIFF requested a reasonable accommodation and was not given same.

65.    Despite COLLECTIVE DEFENDANTS' actual and constructive knowledge of PLAINTIFF'S disability, and the fact that PLAINTIFF continued to submit medical documentation, as well as PLAINTIFF'S request(s) for reasonable accommodations, DEFENDANT O'KEEFE sought to unfairly penalize PLAINTIFF due to his disabilities.

66.    PLAINTIFF later returned to work and, as always, provided DEFENDANTS with a doctor's note explaining that he was hospitalized due to his disability.

67.    On or about October 3, 2018, PLAINTIFF was (wrongfully) terminated from his job at PIER SIXTY following another Sickle Cell crisis.

68.    Days before PLAINTIFF'S termination, PLAINTIFF was assigned to work in two separate buildings at PIER SIXTY.

69.    As usual, PLAINTIFF was asked to perform heavy lifting without assistance and PLAINTIFF felt his body becoming ill as a result. PLAINTIFF completed the assigned

task(s), endured the physical pain and completed his workday.

70.    The next day, PLAINTIFF woke up in severe pain and could not force himself out of bed to go to work this time as he did on previous occasions.

71.    PLAINTIFF was forced to call out sick from work once more.

72.    The next day, October 2, 2018, DEFENDANT O'KEEFE directed PLAINTIFF to not come into work and to wait for Human Resources to contact him.

73.    Then, on October 3, 2018, PLAINTIFF received a call from DEFENDANT TORMEY, who advised PLAINTIFF that he was being terminated because of his "*attendance issues*."

74.    At all times, COLLECTIVE DEFENDANTS were aware that PLAINTIFF had a disability, sought a reasonable accommodation and was not considered for same.

75.    Most certainly, by October 3, 2018, PLAINTIFF was employed by DEFENDANT PIER SIXTY for over a year and performed the requisite hours of work to be qualified for FMLA leave.

76.    DEFENDANTS never engaged in any interactive process with PLAINTIFF and never offered PLAINTIFF his options under FMLA for his disabilities.

77.    DEFENDANTS had no good faith business justification for the actions taken against PLAINTIFF herein.

78.    PLAINTIFF was terminated due to his disabilities and/or terminated for seeking reasonable accommodations.

79.    At no time did DEFENDANTS intend to offer PLAINTIFF accommodations as is required under Federal, State and/or City laws.

80.    But for PLAINTIFF'S disability and request for accommodations, PLAINTIFF would not have been (wrongfully) terminated from his employment.

81.   As Plaintiff had no performance problems other than alleged "*attendance*" issues, DEFENDANTS terminated PLAINTIFF solely due to his disabilities.

82.   In the event that PLAINTIFF did have performance issues, DEFENDANTS never intended to give PLAINTIFF a reasonable opportunity to correct his alleged performance deficiencies because Defendants' sole purpose and intent was to fabricate a reason to terminate PLAINTIFF.

83.   COLLECTIVE DEFENDANTS' actions were malicious, intentional and intended to harm PLAINTIFF.

84.   As a result of Defendants' actions, PLAINTIFF was humiliated, degraded, victimized, embarrassed and emotionally distressed.

85.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

86.   DEFENDANTS' conduct has been malicious, willful, outrageous and conducted with full knowledge of the law. As such, punitive damages as against DEFENDANTS are appropriate.

### AS A FIRST CAUSE OF ACTION FOR *DISCRIMINATION* <br> UNDER THE AMERICANS WITH DISABILITIES ACT <br> (*Against Defendants AK PIER SIXTY, PIER SIXTY and CHELSEA PIERS*)

87.   PLAINTIFF repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

88. <u>Title 42 of the Americans with Disabilities Act of 1990</u>, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

89. But for Plaintiff's Sickle Cell Anemia and request for reasonable accommodations, DEFENDANTS would not have terminated PLAINTIFF'S employment.

90. PLAINTIFF advised DEFENDANTS that he had a disability and requested reasonable accommodations on multiple occasions.

91. DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process.

92. Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

93. Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to advise PLAINTIFF of his right to leave under the FMLA.

94. DEFENDANTS DOMINGUEZ and O'KEEFE knew or should have known of their obligations to accommodate PLAINTIFF under the ADA and FMLA.

95. COLLECTIVE DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

96. At the time that DEFENDANTS terminated PLAINTIFF'S employment, DEFENDANTS did not advise PLAINTIFF of his rights under the FMLA.

97.     As PLAINTIFF had no performance issues prior to his hospitalization(s), DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

98.     COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of his disability and/or temporary hospitalization(s).

99.     As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

100.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS A SECOND CAUSE OF ACTION FOR *RETALIATION* UNDER THE AMERICANS WITH DISABILITIES ACT (*Against Defendants AK PIER SIXTY, PIER SIXTY and CHELSEA PIERS*)

101.    PLAINTIFF repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

102.    The ADA prohibits retaliation, interference, coercion, or intimidation.

103.    42 U.S.C. § 12203 provides:

   i.     Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

   ii.    Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

104.    DEFENDANTS engaged in an unlawful discriminatory practice by retaliating against PLAINTIFF because of his disability and for engaging in protected activity by requesting a reasonable accommodation.

105.    Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

106.    Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to advise PLAINTIFF of his right to leave under the FMLA.

107.    DEFENDANTS DOMINGUEZ and O'KEEFE knew or should have known of their obligations to accommodate PLAINTIFF under the ADA and FMLA.

108.    But for PLAINTIFF'S Sickle Cell Anemia, DEFENDANTS would not have terminated him.

109.    But for PLAINTIFF'S multiple request for reasonable accommodations, DEFENDANTS would not have terminated his employment.

110.    As PLAINTIFF had no performance issues prior to his hospitalizations, Defendants had no good-faith business justification to terminate PLAINTIFF.

111.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

112.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**THIRD CAUSE OF ACTION FOR *DISCRIMINATION, RETALIATION and INTERFERENCE* UNDER THE FAMILY AND MEDICAL LEAVE ACT (*Against Defendants AK PIER SIXTY, PIER SIXTY and CHELSEA PIERS*)**

110.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

111.    Section 2612(d)(2)(B) of the <u>FMLA</u>, states in pertinent part: "an eligible employee shall be entitled to a total of 12 work weeks of leave during any 12-month period . . . Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

112.    Section 2615(a) of the <u>Family Medical Leave Act</u>, states in pertinent part:

Interference with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

113.    Defendants PIER SIXTY and CHELSEA PIERS violated these sections as set forth herein.

114.    Upon information and belief, DEFENDANTS PIER SIXTY and CHELSEA PIERS could have and should have allowed PLAINTIFF to properly exercise his rights under the FMLA.

115.    DEFENDANTS could have and should have advised PLAINTIFF of his rights under the FMLA.

116.    Among other things, DEFENDANTS had an obligation to advise PLAINTIFF of his FMLA rights when they became aware of his disability and need for reasonable accommodations.

117.   DEFENDANTS herein interfered with PLAINTIFF'S FMLA rights by refusing to advise PLAINTIFF of his rights and by preventing PLAINTIFF from taking FMLA leave.

118.   DEFENDANTS were not concerned with the well-being of their employee, PLAINTIFF. Instead, DEFENDANTS were aiming to eliminate PLAINTIFF by any means.

119.   DEFENDANTS then retaliated against PLAINTIFF for engaging in protected activity by terminating his employment without advising him of his rights under the FMLA.

120.   Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

121.   Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to advise PLAINTIFF of his right to leave under the FMLA.

122.   DEFENDANTS DOMINGUEZ and O'KEEFE knew or should have known of their obligations to accommodate PLAINTIFF under the FMLA.

123.   COLLECTIVE DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

124.   As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

125.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe

emotional and physical distress.

126. As such, PLAINTIFF is entitled to the maximum amount allowed under this law, as well as all other remedies available under the FMLA.

### AS A FOURTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Against All Defendants)

127. PLAINTIFF repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

128. The Administrative Code of the City of New York § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

129. The Defendants violated the section cited herein.

130. But for Plaintiff's Sickle Cell Anemia and request for reasonable accommodations, DEFENDANTS would not have terminated PLAINTIFF'S employment.

131. PLAINTIFF advised DEFENDANTS that he had a disability and requested reasonable accommodations on multiple occasions.

132. DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process.

133. Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

134.    Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to advise PLAINTIFF of his right to leave under the FMLA.

135.    DEFENDANTS DOMINGUEZ and O'KEEFE knew or should have known of their obligations to accommodate PLAINTIFF.

136.    COLLECTIVE DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

137.    At the time that DEFENDANTS terminated PLAINTIFF'S employment, DEFENDANTS did not advise PLAINTIFF of his rights under the FMLA.

138.    As Plaintiff had no performance issues prior to his hospitalization(s), Defendants had no good-faith business justification to terminate Plaintiff.

139.    COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of his disability and/or temporary hospitalization(s).

140.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

141.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS A FIFTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE *(Aider And Abettor Liability (Against Individual Defendants)*

142.    PLAINTIFF repeats and realleges each and every paragraph above as if said paragraphs

were more fully set forth herein at length.

143.    The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

144.    DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

145.    But for Plaintiff's Sickle Cell Anemia and request for reasonable accommodations, DEFENDANTS would not have terminated PLAINTIFF'S employment.

146.    PLAINTIFF advised DEFENDANTS that he had a disability and requested reasonable accommodations on multiple occasions.

147.    DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process.

148.    Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

149.    DEFENDANTS DOMINGUEZ and O'KEEFE knew or should have known of their obligations to accommodate PLAINTIFF.

150.    COLLECTIVE DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

151.    At the time that DEFENDANTS terminated PLAINTIFF'S employment, DEFENDANTS did not advise PLAINTIFF of his rights under the FMLA.

152.    As Plaintiff had no performance issues prior to his hospitalization(s), Defendants had no

good-faith business justification to terminate Plaintiff.

153.    COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of his disability and/or temporary hospitalization(s).

154.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

155.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS A SIXTH CAUSE OF ACTION FOR *RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (*Against All Defendants*)

156.    PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

157.    The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

158.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

159.    DEFENDANTS engaged in an unlawful discriminatory practice by retaliating against PLAINTIFF because of his disability and for engaging in protected activity by requesting

a reasonable accommodation.

160. Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

161. Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to advise PLAINTIFF of his right to leave under the FMLA.

162. DEFENDANTS DOMINGUEZ and O'KEEFE knew or should have known of their obligations to accommodate PLAINTIFF.

163. But for PLAINTIFF'S Sickle Cell Anemia, DEFENDANTS would not have terminated him.

164. But for PLAINTIFF'S multiple request for reasonable accommodations, DEFENDANTS would not have terminated his employment.

165. As PLAINTIFF had no performance issues prior to his hospitalizations, Defendants had no good-faith business justification to terminate PLAINTIFF.

166. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

167. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A SEVENTH CAUSE OF ACTION FOR *DISCRIMINATION*
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

**(*Vicarious Liability Against AK PIER SIXTY, PIER SIXTY and CHELSEA PIERS*)**

168.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

169.    The New York City Administrative Code § 8-107(13) states: "Employer liability for discriminatory conduct by employee, agent or independent contractor" provides:

   a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

      i. the employee or agent exercised managerial or supervisory responsibility; or
      ii. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
      iii. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

   c.   An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

170.    DEFENDANTS violated the section cited herein as set forth.

171.    But for Plaintiff's Sickle Cell Anemia and request for reasonable accommodations, INDIVIDUAL DEFENDANTS, who were each acting as agents, representatives, employees, managers and supervisors for DEFENDANTS PIER SIXTY and CHELSEA PIERS would not have terminated PLAINTIFF'S employment.

172.   PLAINTIFF advised DEFENDANTS that he had a disability and requested reasonable accommodations on multiple occasions.

173.   DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process.

174.   Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

175.   DEFENDANTS DOMINGUEZ and O'KEEFE knew or should have known of their obligations to accommodate PLAINTIFF.

176.   COLLECTIVE DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

177.   At the time that DEFENDANTS terminated PLAINTIFF'S employment, DEFENDANTS did not advise PLAINTIFF of his rights under the FMLA.

178.   As Plaintiff had no performance issues prior to his hospitalization(s), Defendants had no good-faith business justification to terminate Plaintiff.

179.   COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of his disability and/or temporary hospitalization(s).

180.   But for INDIVIDUAL DEFENDANTS' respective positions and employments at AKPS, PIER SIXTY and/or CHELSEA PIERS, INDIVIDUAL DEFENDANTS would not have been able to violate PLAINTIFF'S right as specified above.

181.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other compensation which such employment entails, and PLAINTIFF has also suffered future

pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

182.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS AN EIGHTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK STATE EXECUTIVE LAW (*Against ALL DEFENDANTS*)

183.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

184.    The New York State Executive Law § 296(1)(a) provides in pertinent part:

185.    "It shall be an unlawful discriminatory practice: For an employer . . . because of an individual's . . . disability . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

186.    COLLECTIVE DEFENDANTS violated this section as set forth herein.

187.    At all times, PLAINTIFF suffered from a disability.

188.    But for Plaintiff's Sickle Cell Anemia and request for reasonable accommodations, DEFENDANTS would not have terminated PLAINTIFF'S employment.

189.    PLAINTIFF advised DEFENDANTS that he had a disability and requested reasonable accommodations on multiple occasions.

190.    DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process.

191.    Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to engage in

an interactive process and to access whether they could accommodate PLAINTIFF.

192.   DEFENDANTS DOMINGUEZ and O'KEEFE knew or should have known of their obligations to accommodate PLAINTIFF.

193.   COLLECTIVE DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

194.   At the time that DEFENDANTS terminated PLAINTIFF'S employment, DEFENDANTS did not advise PLAINTIFF of his rights under the FMLA.

195.   As Plaintiff had no performance issues prior to his hospitalization(s), Defendants had no good-faith business justification to terminate Plaintiff.

196.   COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of his disability and/or temporary hospitalization(s).

197.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

198.   As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS FOR A NINTH CAUSE OF ACTION FOR *RETALIATION*
UNDER THE NEW YORK STATE EXECUTIVE LAW
(*Against ALL DEFENDANTS*)**

199.   PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

200.   New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory

practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

201.    COLLECTIVE DEFENDANTS violated this section as set forth herein.

202.    DEFENDANTS engaged in an unlawful discriminatory practice by retaliating against PLAINTIFF because of his disability and for engaging in protected activity by requesting a reasonable accommodation.

203.    Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to engage in an interactive process and to access whether they could accommodate PLAINTIFF.

204.    Most certainly, DEFENDANT TORMEY, who was responsible for Human Resources and personnel issues, was aware of COLLECTIVE DEFENDANTS' obligations to advise PLAINTIFF of his right to leave under the FMLA.

205.    DEFENDANTS DOMINGUEZ and O'KEEFE knew or should have known of their obligations to accommodate PLAINTIFF.

206.    But for PLAINTIFF'S Sickle Cell Anemia, DEFENDANTS would not have terminated him.

207.    But for PLAINTIFF'S multiple request for reasonable accommodations, DEFENDANTS would not have terminated his employment.

208.    As PLAINTIFF had no performance issues prior to his hospitalizations, Defendants had no good-faith business justification to terminate PLAINTIFF.

209.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other

compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

210.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

## JURY DEMAND

211.    Plaintiff requests a jury trial.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by the Americans with Disabilities Act, the Family Medical Leave Act, New York City Administrative Code, and New York State Human Rights Law in that Defendants discriminated against Plaintiff on the basis of his disability;

B.    Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D.    Awarding Plaintiff punitive damages;

E.    Awarding Plaintiff any and all remedies available under the FMLA;

F.    Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated:  New York, New York
        September 11, 2019

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

By:     _____ /s/ _____
Gregory Calliste, Jr. , Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
gcalliste@tpglaws.com
(212) 248-7431
